290 So.2d 30 (1974)
STATE of Florida, Petitioner,
v.
Cullen DAVIS, Respondent.
No. 43874.
Supreme Court of Florida.
February 13, 1974.
Robert L. Shevin, Atty. Gen., and David Luther Woodward and Richard W. Prospect, Asst. Attys. Gen., for petitioner.
James A. Gardner, Public Defender, and Thomas A. Capelle and Charles H. Livingston, Asst. Public Defenders, for respondent.
BOYD, Justice.
This cause is before us on petition for writ of certiorari to review the decision of the District Court of Appeal, Second District, reported at 276 So.2d 846. Our jurisdiction is based on conflict between the decision sought to be reviewed and, inter alia, Tracey v. State[1] and Redditt v. State.[2]
Respondent was convicted of robbery in the Court of Record, Hillsborough County. The Second District reversed and remanded for a new trial on the basis that the admission of evidence of another crime violated *31 the rule of Williams v. State.[3] The State has urged that the District Court erred because the Williams rule issue was not raised in appellant's brief, although it was assigned as error in the Assignments of Error.
The appellant's brief, an "Anders" brief, filed on the authority of Anders v. California,[4] concluded:
"The evidence presented, even excluding the Williams rule testimony, were it inadmissible, is still more than sufficient to sustain a verdict of guilty."
In its first opinion on the matter, the Second District noted that:
"Appellant was informed against for the crime of robbery of Miss Virginia Brown, an employee of Pioneer Cleaners. The jury convicted him and he was sentenced to ten years in prison. Neither the public defender's nor the State's brief was of any assistance to the court in this appeal. The public defender filed a brief commonly referred to as an `Anders' brief, alleging that they could find no arguable support for the appeal. The State agreed with the public defender."

* * * * * *
"This court has rather liberally construed Williams v. State, supra, and has been called upon numerous times to interpret the principles laid down in that case. We reiterate here what we believe this case stands for:
`[E]vidence revealing other crimes is admissible if it casts light upon the character of the act under investigation by showing motive, intent, absence of mistake, common scheme, identity or a system or general pattern of criminality so that the evidence of the prior offenses would have a relevant or a material bearing on some essential aspect of the offense being tried.' Williams v. State, 110 So.2d at 662.
"From the record it appears that the State adduced sufficient proof that the appellant robbed Miss Brown. The State also proved that Mingo's Food Store had been robbed. Although there was some conflict as to the testimony regarding identification, the jury could certainly have believed that the appellant robbed Mingo's. But these are two separate and distinct crimes. One is not relevant. The evidence of one of the offenses would have no relevancy or material bearing on an essential aspect of the other as required by Williams. One does not go to prove intent, common scheme, identity and certainly no general pattern as required by Williams. These are two separate and distinct crimes. The State went in for the over-kill and in doing so committed reversible error.
"For these reasons we reverse and remand for a new trial."[5]
Upon petition for rehearing, which had been sought by the State on the grounds that the issue was not raised in appellant's brief, although it did appear in the assignment of error, the Second District noted:
"Technically, the Attorney General is right. We did consider a point not raised by the appellant in his brief. In fact, the former Public Defender for the Twelfth Circuit did not raise any point in his brief. We deny rehearing.
"In the event the State wishes to allege that we are in conflict with Proctor v. Hart, 1854, 5 Fla. 465, and McNally v. State ex rel. Bond Realization Corp., 1933, 112 Fla. 434, 150 So. 751, and seek certiorari, it may help to describe the procedural posture of the matter as we see it. We did by-pass the procedures a bit by recognizing the obvious error in this record. The State, in its petition for rehearing, makes no charge that we were wrong on the law or that there is *32 any argument that can be made in support of this judgment. ..."
* * * * * *
"If perchance the State's insistence on this technicality shall culminate in the reversal of our decision, Davis should file in this court a petition for habeas corpus pursuant to Baggett v. Wainwright, Fla. 1969, 229 So.2d 239, seeking delayed appellate review. Certainly the performance he got from his appointed, State-paid counsel is as close to no review as is possible to get. Should that expedient fail, Davis' case might conceivably wind up in federal court, where he surely could maintain the contention that he has been deprived of due process, as in Anders v. California, 1967, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493. But sooner or later, Davis is going to get a fair trial. From the standpoint of the public as well as Davis, it ought to be sooner.
"We have emphasized lately that convictions ought not be reversed on account of non-prejudicial technicality. In effect, what we are saying in Judge Liles' opinion and in this denial of rehearing is that patently invalid convictions ought not be affirmed on the basis of technicalities which cannot in the end thwart effective appellate review once the appellant gets the due process to which he is entitled."[6]
On the merits, the Second District's opinion on rehearing recognized, as was asserted in appellant's brief, that the other evidence presented at the trial was more than sufficient to convict, and that the Williams rule testimony added nothing to the State's case. However, it was found that the evidence was wrongfully admitted, and due to the fact that two witnesses appeared, taking 25 pages of testimony, the evidence became a "feature" of the trial. On this basis, the District Court reversed on the authority of Green v. State,[7] which excluded evidence of a prior crime, although the prior crime was material, because the prior crime became "a feature instead of an incident" of the trial.
The State has urged conflict with numerous cases. One of these is Tracey v. State,[8] where it was held that:
"Failure to assign a question as error, or if assigned, failure to argue it in the brief filed here precludes that a consideration of the question, unless the question constitutes fundamental error."[9]
Another representative case cited by the State is Redditt v. State,[10] which, in discussing the assignments of error, noted that Florida law provides that:
"Such assignments of error as are not argued will be deemed abandoned."[11]
Thus, before this Court, two issues arise in this proceeding. The first of these is the threshold question of whether the Second District properly considered the Williams rule issue, which, although raised as an assignment of error, was not argued in appellant's "Anders" brief. If the answer to this question is in the negative, a reversal of the District Court is called for without further discussion. If the answer to this question is in the affirmative, we must then pass to the merits of the Williams rule issue.
As regards the threshold question of the very consideration of the Williams rule issue by the District Court, one must turn to the opinion of the Supreme Court of the *33 United States in Anders v. California,[12] wherein that Court discussed not only the purposes behind the filing of an "Anders" brief, but also the procedures to be followed by the appellate court upon the receipt of such a brief:
"Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court  not counsel  then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

"This requirement would not force appointed counsel to brief his case against his client but would merely afford the latter that advocacy which a nonindigent defendant is able to obtain. It would also induce the court to pursue all the more vigorously its own review because of the ready references not only to the record, but also to the legal authorities as furnished it by counsel."[13]
It would appear then that, while the action of the District Court in the instant case may well have been in conflict with prior decisions of this Court regarding the general law pertaining to the waiving of assignments of error, the action of the District Court was nevertheless certainly in accord with that mandated by the Supreme Court of the United States in Anders, wherein, as noted, the Court said that after an Anders brief was filed, "The Court  not counsel  then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous". What is evident from the Court's opinion in Anders is that the function of an Anders brief is not to make the traditional and judicial determination of whether or not a case is meritorious a new part of the public defender's job; rather, it is apparent that under the mandate of Anders, even after such a brief is filed by the public defender, it is still the appellate court's duty to review the record, sua sponte, to determine whether or not, in its opinion there has been error committed. It would appear that, at least in this limited area of the law, i.e., when an "Anders". brief is filed on behalf of an indigent defendant by his State-appointed counsel, the general Florida law regarding the waiving of assignments of error must bend to the rule enunciated by the Supreme Court of the United States in Anders.[14] It would thus appear, as regards the threshold question of consideration of the Williams rule issue, the Second District was correct in so considering that issue, inasmuch as it was merely following its duty as enunciated by Anders.
On the merits, petitioner argues that the Williams rule is a rule of relevancy, and the obviously proper objection to the proffer of testimony under that is to relevancy.
*34 Petitioner argues that, in the trial court, the defense made a rambling general objection thereto, whereas the proper objections should have been that the testimony was incompetent, irrelevant and immaterial, and that the only purpose of the proffer was to place the defendant's character in question and to further show his propensity to commit crimes.
Petitioner cites Franklin v. State,[15] which interpreted the Williams rule as follows:
"All evidence, including evidence of other criminal acts, is admissible if it is relevant to a factual issue in the case unless its sole relevance is to prove propensity to commit a crime. We understand this to mean that a court must admit evidence that a defendant has committed other criminal acts unless the defendant can show reason why it should not be admitted. The burden of showing the evidence ought to be excluded is on the defendant. He must raise the objection that the evidence is irrelevant and prejudicial, i.e., that it shows mere propensity to commit a crime. The burden then shifts to the State to show that the evidence is relevant to a factual issue and is not being introduced for the purpose of showing mere propensity. It is convenient for the State to meet this burden by showing that the criminal act falls into a familiar category, e.g., to prove identity, plan, common scheme or design. The foregoing categories we repeat are given by way of example and not by way of limitation. Evidence of another criminal act may not fall into one of the foregoing categories and yet still be relevant to a factual issue in a case.
* * * * * *
"It is elemental that a defendant cannot be convicted of having committed a particular robbery solely by showing that the defendant committed other robberies. But he could be convicted by a showing that there is some relationship, similarity, some common denominator between the robbery the defendant is being tried for and other robberies. Such a showing would not constitute inadmissible evidence because it would bear on something other than propensity. (We use the double negative to emphasize the fact the Supreme Court of Florida in the Williams case, supra, announced a broad rule of admissibility with specific areas of exclusion, and not a broad rule of inadmissibility with specific exceptions . ..)".[16]
The petitioner concludes that the record in the instant case clearly reflects the failure on the part of the defense to show the necessity of exclusion, and, therefore, the District Court seized upon an issue not fundamental, nor adequately prejudicial to warrant reversal.
In response, respondent argues that, at trial, counsel for State offered Williams rule testimony by specifically naming it as such immediately prior to defense counsel's objection in the following exchange:
"`Mr. Webster: Your Honor, at this time the State would offer the Williams rule testimony.

The Court: Hold on just one minute, Mr. Bailiff, please.
Mr. Webster: Offer it as admissible evidence under the Williams v. State, showing identity, pattern of this defendant, with respect to these armed robberies, this armed robbery.
The Court: Ready?
Mr. Mirabole: Yes, your Honor, I would like to object to the admission of this based on the testimony of Mrs. *35 Morris. She could not truly identify this man. Neither witness saw him.
Secondly, their testimony is based, one, on the walk and voice as testified to by Mrs. Morris and Mrs. Wilbon could only testify as to his features. And, in fact her testimony positively stated that he had no scars on his face. And if the Court takes a view of the defendant, can readily see that he has a scar on his forehead. But there is really no identification of this man. And I think it would be extremely prejudicial to introduce this to the jury." (Emphasis supplied.)
Given this context, respondent urges that the objection by defense counsel to testimony from the two witnesses can be clearly seen as an objection to Williams rule testimony; moreover, respondent's motion for new trial recited the trial court's error in a more precise term:
"The Court erred in allowing testimony of Shirley Wilbon and Katherine Morris under the Williams rule".
Respondent concludes, therefore, that it seems quite apparent that specific objection to the Williams rule testimony was made at the trial level, as to preserve the objection for appeal.
Finally, respondent notes that at no point in the proceeding has the attorney general challenged the conclusion that the Williams rule testimony was not relevant to the charge for which appellant was convicted.[17]
Our careful examination of the record, together with the petition and briefs and arguments of counsel, leads us to the conclusion that the District Court was correct in reversing and remanding for a new trial on the basis that the "Williams" testimony of two witnesses became a "feature" of the trial.[18]
Accordingly, the decision of the District Court of Appeal, Second District, is affirmed.
It is so ordered.
CARLTON, C.J., and ERVIN and McCAIN, JJ., concur.
ROBERTS, ADKINS and DEKLE, JJ., dissent.
NOTES
[1] 130 So.2d 605 (Fla. 1961).
[2] 84 So.2d 317 (Fla. 1956).
[3] 110 So.2d 654 (Fla. 1959).
[4] 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).
[5] 276 So.2d at 847-848. (Emphasis supplied.)
[6] Id. at 848-849. (Emphasis supplied.)
[7] 228 So.2d 397 (Fla.App.2d 1969).
[8] See note 1, supra.
[9] 130 So.2d at 610.
[10] See note 2, supra.
[11] 84 So.2d at 320.
[12] See note 4, supra.
[13] 386 U.S. at 744-745, 87 S.Ct. at 1401 (Emphasis supplied.)
[14] Tracey and Redditt are, of course, but two representatives of the many Florida decisions enunciating the general "not argued equals abandoned" rule of appellate practice. Under today's decision, we naturally recede from all such decisions  in the limited area concerning briefs filed on behalf of indigents by their State-appointed counsel  where such decisions conflict with the mandate of the Supreme Court of the United States in Anders.
[15] 229 So.2d 892 (Fla.App.3d), cert. denied, 237 So.2d 754 (Fla. 1970).
[16] 229 So.2d at 893-894.
[17] The State, in fact, has admitted that the testimony did not properly come within the purview of the Williams rule.
[18] See 276 So.2d at 847-849 for the Second District's thorough discussion of the subject.